# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Keith Walker, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-004231 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Honorable John F. Kness |
| | ) | |
| Administrator of the Estate of Former Chicago | ) | |
| Police Department Commander Jon Burge, *et* | ) | Magistrate Judge Gabriel A. Fuentes |
| *al*., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO**
**VOLUNTARILY DISMISS WITHOUT PREJUDICE**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

    Background Relevant to Motion .......................................................................................... 4

    The crime ............................................................................................................................ 4

    The context of Walker's motion ........................................................................................ 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

    A.    Prejudice relating to Bell's prison calls with Walker and Bell's January 2021 Affidavit stating they do not know each other. ...................................................................................... 9

        Lies in Bell's affidavit and Walker's answers to written discovery. ................................ 15

    B.    *Pace* Factors weigh in favor of dismissal with prejudice, or alternatively, this Court should impose certain conditions in lieu of a dismissal with prejudice. ........................................ 17

        i.    Dismissal with prejudice is appropriate. ...................................................................... 17

        ii.    In the alternative, a dismissal without prejudice that includes certain terms and conditions is warranted. ...................................................................................................... 20

## CASES

*A.P. v. Abbot Labs, Inc.*, 2019 U.S. Dist. LEXIS 229353 (S.D. Ill. Aug. 27, 2019) .................... 20

*Bishop v. White*, 16 C 6040, 2023 WL 35157 (N.D. Ill, Alonso, J.) ........................................... 19

*Pace v. Southern Express Co.*, 409 F.2d 331 (7th Cir. 1969).................................................... 8, 17

*Parker v. Freightliner Corp.*, 940 F. 2d 1019 (7th Cir. 1991)..................................................... 20

*Ratkovich v. Smith Kline*, 951 F.2d 155 (7th Cir. 1991)................................................................. 8

*S.B. KinderCare Learning Ctrs., LLC*, 815 F. 3d 150 (3rd Cir. Mar. 10, 2016) ......................... 21

*Stern v. Barnett*, 452 F.2d 211 (7th Cir. 1971) ....................................................................... 7, 19

*Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F. 2d 54 (7th Cir. 1980)................. 8, 17, 19, 20

Defendants, Daniel McWeeny, John Halloran, Anthony Maslanka, William Moser, Louis Caesar, Thomas Brankin, Robert Lane, John Smith, David Golubiak, John Griffin, John Byrne, Doris Byrd, Nicholas Ford and Michelle McDowell Simmons, Douglas Stalley as Personal Representative for the Estate of Jon Burge, Susan McCann as Special Representative for the Estate of John McCann, Geri Lynn Yanow as Special Representative for the Estate of Nick Crescenzo and the Estate of Craig Cegielski, Anthony Schumann as Special Representative of Defendant Leroy Martin, and the City of Chicago, by their respective undersigned counsel, submit the following opposition to Plaintiff's (Corrected) Opposed Motion to Voluntarily Dismiss, pursuant to Fed. R. Civ. Proc. 41 (a)(2) (Dkt. 241, herein "Motion").

## INTRODUCTION

Over two years into this lawsuit, suddenly, Plaintiff Keith Walker moved to voluntarily dismiss without providing *any* justification to the Court as to why the dismissal should be without prejudice or why he wished to dismiss now. Walker's counsel had, before filing, represented to defense counsel that Walker wished to dismiss his suit without prejudice for unexplained mental-health reasons. But coincidentally, this supposed emotional reluctance to continue his suit for tens of millions of dollars, came soon after recorded phone calls obtained in discovery, revealed that Walker coached a key witness in this case, his former co-defendant Marcus Bell, to lie in an affidavit used to get Walker a Certificate of Innocence ("COI"). The calls further revealed that Walker lied in Interrogatory Responses in this case. Dismissing now would stall efforts to depose Bell, Walker, and other key witnesses. Especially key is the deposition of Bell, who is soon to be released from prison and may disappear in the year that Walker requests to refile.

Defendants have been trying to depose Bell since March, 2023. (*See* Dkt. 222 at ¶ 5.) Walker successfully prevented Defendants from leading the charge in Bell's deposition after

months of negotiations led the parties to file a Joint Motion for Leave to Depose Marcus Bell, and Incarcerated Witness and to Resolve Certain Issues Relating to this Deposition. (*Id*.) Yet Walker never moved forward with Bell's deposition, despite Defendants' requests to schedule it. Bell is now set to leave prison in early December, and Defendants worry that they will not be able to locate him after his release. Magistrate Judge Fuentes recognized this concern, so after Walker's motion to dismiss was filed, he allowed discovery related to Marcus Bell to continue and stayed all other discovery on the basis of judicial economy. (Dkt. 252.). As part of the planning conference Magistrate Judge Fuentes ordered the parties to conduct on Bell-related discovery, Defendants raised again their concern that not all documents responsive to their subpoena to the Exoneration Project ("EP"), a clinic run and staffed by Loevy & Loevy attorneys, for the communications of Walker's counsel with third parties during Walker's postconviction and COI proceedings were produced. Defendants were now certain such documents exist based on information contained in Bell's calls.

Walker's suit must be dismissed with prejudice because delaying discovery from continuing—for up to a year—will very likely mean that critical evidence is lost. This case involves events from over thirty years ago. Besides the possible inability in the future to obtain testimony from Bell and others implicated in the scheme to lie to this Court and the state court for a COI, there are other major challenges in gathering evidence that warrant rejecting any delay.

Key witnesses have died, memories have faded, and witnesses have been difficult to locate and have been reluctant to cooperate. Added to that, more than half of the Individual Defendants have not yet been deposed, and several have experienced significant health issues since the case was filed, and one, Anthony Maslanka, died during the pendency of this suit. (*See* Dkt. 183.)

A year's delay could mean that critical witness testimony and other evidence is never obtained. Several witnesses in this case have been evasive and difficult to locate. Defendants have spent a significant amount of resources and the better part of a year tracking down these witnesses. Should Walker be allowed another year to refile this case, it is highly likely these individuals will again make themselves scarce and Defendants will have to duplicate their already expensive and time-consuming efforts in analyzing this evidence and locating and securing cooperation of these witnesses.

Specifically, as a result of the two-plus years of litigation, Walker now has significant insight into Defendants' litigation strategy. In fact, discovery was set to close in November 2023 before it was stayed because of this motion. If Walker were allowed to refile his case after a year-long hiatus, he would likely use this additional time to revise his litigation strategy with this added insight and secure additional favorable evidence and witness testimony that he likely would not have had an opportunity to develop given the impending discovery deadline. With no litigation pending, Walker could do this work without any obligation to inform Defendants.

As Defendants were preparing this response, yesterday without warning—before Bell's deposition could be scheduled, and before the records of communications Walker's EP attorneys had with witnesses such as Bell were produced—Loevy & Loevy moved to withdraw its representation of Walker, stating that Walker "no longer" wished to dismiss his case, and the firm did not believe they could continue to represent Walker. Dkt. 253, ¶2.[1] Before filing this motion, the firm did not provide any of the Exoneration Project records that were outstanding regarding Marcus Bell.

---

[1] Soon after the motion to withdraw was filed, Magistrate Judge Fuentes temporarily stayed all discovery, but has allowed Defendants to file a motion if they object to the stay, which Defendants plan to do. Dkt. 254.

With the abrupt change in positions and no definitive decision by Walker, Defendants have decided to protect their rights and file this response. At this point, Walker has not actually withdrawn his motion to dismiss. His counsel suggested only that any *ruling* be held in abeyance. *Id.* ¶9. Even if Walker does withdraw his motion to dismiss, the reasons for a dismissal with prejudice are also reasons why Walker should not be able to halt discovery should Loevy & Loevy be permitted to withdraw. Any delay in discovery would prejudice Defendants as it would put in jeopardy the collection of critical testimony, which is almost certainly evidence that will hurt Walker's case. A delay would only benefit Walker. Whatever is afoot, Walker must not be able to dismiss without prejudice or delay discovery, because either outcome will severely prejudice Defendants.

**Background Relevant to Motion**

Walker filed this lawsuit on August 10, 2021, primarily alleging that he was framed by way of coerced and fabricated statements for the June 3, 1991 fatal shooting and attempted robbery of Shawn Wicks, a crime he claims he had nothing to do with and further claims he was not even present when it occurred. (Dkt. 1.) The lawsuit is premised on his success in overturning his conviction and obtaining a Certificate of Innocence ("COI"). Walker named twelve individual former Chicago Police Officers (mostly Detectives involved in the underlying investigation), five estates of former Chicago Police Officers, two former Cook County Assistant State's Attorneys, as well as the City of Chicago and Cook County. Fact discovery began in March 2022 and, prior to Walker's Motion, was set to close November 6, 2023.

**The crime**

Walker and his three co-defendants – Marcus Bell ("Bell"), Tyshawn Ross ("Ross") and Yusef Trice ("Trice") - were convicted of the crimes relating to the Wicks shooting. Although

4

Walker's conviction was vacated, the other three remain intact. Wicks's murder was the result of a failed robbery attempt. The CPD investigation led them to suspect Bell and Walker, who they understood to go by "Rufus," hatching a scheme to rob Wicks and enlisting Trice and Ross to assist, but the plan went awry and resulted in the fatal shooting of Wicks. Ultimately, all four gave statements to the Felony Review Assistant State's Attorneys, minimizing their own culpability but admitting to being involved in the crime. In those statements, Bell, Ross, and Trice implicated Walker as the shooter. Wicks was also able to view a photo array from his hospital bed a couple days after the shooting and identified Walker as the shooter before succumbing to his wounds a couple of days later.

Walker, Bell, and Ross were convicted of murder and attempted armed robbery. Trice was found guilty of attempted robbery and possession of a weapon. On August 13, 2020, the Illinois Attorney General (acting as Special Prosecutor in the postconviction proceedings) agreed to vacate the charges against Walker based on ineffective assistance of counsel and the charges were dismissed. Of the four co-defendants in the Wicks case, Walker is the only one whose conviction has been overturned.

On November 30, 2021, Walker filed a Petition for a COI ("Petition"), claiming "stunning new evidence supports Walker's long-standing claims of innocence." (Ex. 1 at 11.) Affidavits from Bell, Trice and Ross were submitted as part of that "evidence." (Ex. 2, 3 and 4.) In his Petition, Walker argued that he was not even present before or during the crime. This argument was based solely on the affidavits obtained by Walker's postconviction counsel from the Loevy & Loevy-run Exoneration Project[2] from Bell, Trice and Ross in 2021. In those affidavits, Bell, Trice

---

[2] Two of the attorneys representing Walker as part of the Exoneration Project were Lauren Myerscough-Mueller and Sean Starr. (*See* Ex. 1, Walker's COI Petition, p. 33). Mr. Starr also represents Walker in the instant lawsuit as counsel from Loevy & Loevy. (*See* Plaintiff's Third Amended Compl., Dkt. 89).

and Ross, swore that the police physically and psychologically coerced them to lie in their statements. (Ex. 2 (Bell) at ¶¶ 10-17; Ex. 3 (Trice) at ¶¶4-10, 17; Ex. 4 (Ross) at ¶¶7-11). The three, whose statements implicated Walker in the crime, all said in their affidavits they either did not know Walker and/or did not see him the night of the crime. (Ex. 2, (Bell) at ¶¶ 3-4, 7; Ex. 3 (Trice) at ¶¶ 13-14; Ex. 4 (Ross) at ¶¶15). Those affidavits have been produced as evidence in this case. Walker also has sworn to interrogatory responses in this case that state he and his co-defendants did not know each other and that he has no nick names and testified in his criminal proceedings that "never in his life used the name "Rufus.".

**The context of Walker's motion**

Nearing the end of fact discovery, out of the blue, Walker's counsel informed Defendants that Walker wanted to move to dismiss without prejudice. On September 27, 2023, Plaintiff's counsel represented that Walker was not interested in continuing to litigate at this time because of "mental health issues." (Ex. 5, p. 2, 9/27/2023 Email between Benjamin & Loevy). When Defendants inquired further, Plaintiff's counsel declined to provide any more information. *Id*.

The City's defense counsel explained that given the posture of the case, Defendants would not agree to a dismissal without prejudice, but would agree if the dismissal was with prejudice, Walker's counsel, Jonathan Loevy, accused the City of being "irrational" and stated that Walker would not under any circumstances continue with the dismissal if it were with prejudice. Specifically, on October 4, 2023, Mr. Loevy stated that opposing the motion "will cost your clients additional legal fees. That would seem to be an irrational choice, but the City is admittedly not always known for making rational decisions." (Ex. 5, p. 1 10/4/2023 Email between Loevy & Benjamin). Then on October 5, 2023, Mr. Loevy stated, "We are going to file a motion to dismiss very soon. If the City decides to oppose the request to dismiss without prejudice, we will withdraw

6

it, and proceed with the litigation. As I've stated, that would seem irrational from the perspective of your client . . . ." (Ex. 6, p. X, 10/5/2023 Email between Loevy & Benjamin). Walker then filed his voluntary motion to dismiss without prejudice asking for a year to re-file, but providing no explanation as to why he was seeking dismissal. (Dkts. 240, 241.).

Then last night, without warning, Walker's counsel, Loevy & Loevy, filed a motion to withdraw from representation. (Dkt. 253.) No motion has been filed, however, to withdraw Walker's pending motion to dismiss, nor did the Loevy & Loevy motion ask the court to strike Walker's motion to dismiss. The firm claimed it "learned of facts that they believe prevent them from representing Mr. Walker further." (Dkt. 253, ¶¶2-3.) The firm never stated there is an actual conflict, only commenting that the firm was willing to communicate further reasoning *in camera* and *ex parte*. (*Id.*) The motion also states that Walker told them he no longer wants to dismiss the case, but in a turnaround from Mr. Loevy's previous representation, Loevy & Loevy is not willing to move forward with Walker's suit. *Id.*

## LEGAL STANDARD

Where defendants have answered the complaint or filed summary judgment and the parties cannot agree on a stipulation of dismissal, the only option available to a plaintiff seeking to voluntarily dismiss his case is by way of court order, pursuant to Rule 41 (a)(2). The Rule provides in relevant part that: "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. ... Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." "[T]he intent of Rule 41(a)(2) is to prevent voluntary dismissals which unfairly affect the opposing party." *Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir. 1971) (explaining that a motion to dismiss under Rule 41(a) (2) is discretionary, and that traditional principles of dismissals should apply *unless* the defendant will suffer some plain legal prejudice

7

other than the mere prospect of a second lawsuit) (emphasis added). The Seventh Circuit has explained that "that there are several factors that a district court may wish to consider in making its determination as to whether a defendant has suffered legal prejudice. These factors include 'the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal and the fact that a motion for summary judgment has been filed by the defendant.'" *Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir. 1991) citing *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969); *see also Tyco Laboratories, Inc. v. Koppers Co., Inc.*, 627 F. 2d 54, 56 (7th Cir. 1980) (stating *Pace* factors are "a guide," not a "mandate.").

## ARGUMENT

Walker's cursory Motion includes just a single sentence explaining why the Court should grant his Motion, stating that it comes "before the majority of party depositions have occurred, in advance of the close of fact discovery and before any motions for summary judgment having been filed." (Dkt. 241 at ¶ 4.) Missing altogether is *any* explanation for why Walker seeks dismissal *now*, over two years after this case was filed and over a year and a half of fact discovery has been conducted.

Defendants have an educated guess as to why, however, and it is not mental-health related, as Walker's counsel had told Defendants. In what does not appear to be a coincidence, Walker's request for dismissal also coincides with the Illinois Department of Correction's (IDOC's) production of recorded prison calls between Bell and Walker and Bell and others which call into question key assertions made by Walker in his Complaint and discovery responses in support of his claims that his confession was coerced and fabricated.[3] These calls establish not just a close,

---

[3] Defendants initial subpoena to IDOC for Bell's call recordings was noticed on May 22, 2023, to which Plaintiff objected. Following negotiations limiting the scope of the subpoena, Defendants reissued their

long-standing relationship between Bell and Walker that predates the criminal charges and that Walker did in fact go by the nickname "Rufus," but that Walker knowingly submitted false evidence and arguments in support of his efforts to obtain a COI. Walker doubled down on these falsehoods in his verified interrogatory responses in this case.

Obtaining that COI, as Bell put it in one of his calls, aided in Walker's effort to successfully "sue on a federal level which is where the lump sum is…" (Audio Recording of 10/22/2020 Call from Bell to Amelia attached as Exhibit 7 at D2C86 2:11-3:45). The falsehoods that Bell and Walker did not know one another, and that Walker never went by the nickname "Rufus," go to the very heart of a conspiracy of lies designed to undermine the CPD investigation of the Wicks murder and the statements Walker and his co-defendants gave implicating themselves and each other in the crime with the intent of increasing Walker's ability to recover civil damages in this lawsuit based on 29 years of imprisonment.

### A. Prejudice relating to Bell's prison calls with Walker and Bell's January 2021 Affidavit stating they do not know each other.

As detailed above, Defendants obtained Bell's recorded prison telephone calls from 2020 through 2022. Bell's phone calls establish that Bell knew Walker well, he called him "beloved" and Walker repeatedly said Bell was like "brother," in direct contradiction to both Walker's interrogatory responses and Bell's 2021 affidavit. The calls further establish that Bell even set up Walker with the woman he had a child with before being incarcerated. Bell's family members also knew Walker well. And in direct contradiction to Walker's claim he had no nick name, Walker is constantly referred to as "Rufus" throughout the calls.

---

subpoena for Bell's call recordings on June 9, 2023. Hundreds of call recordings were received from IDOC and produced to all parties on or about July 17, 2023. Defendants began their review of these calls in August 2023 and are still completing their review as of the date of this filing. Plaintiff's counsel initially contacted counsel for Defendant Officers on September 27, 2023, advising of his intent to voluntarily dismiss this lawsuit.

The following three examples of calls show how close Bell, his brother, and his sister are with Keith "Rufus" Walker.

On March 22, 2020, Bell called his girlfriend, Amelia Woods ("Amelia"), and asked her if she would communicate with "Rufus" (Walker) for him. (Audio Recording of 3/22/20 Call attached as Exhibit 8 at D1C420 10:08-11:35).

On August 13, 2020, the day Walker's conviction was vacated and the State entered a *nolle prosequi* on the charges, Bell spoke with an individual named Rome Scott ("Rome") who is believed to be a fellow gang member of Walker. In that call, Rome (calling himself "big bro") told Bell ("little bro") that he was on the way to prison to get "him" (Walker) because the judge found "ineffective counsel" throwing out the charges, that Bell's "brother should be home in a couple more hours," and that Walker is going to stay with Rome temporarily. (Audio Recording of 8/13/20 Call attached as Exhibit 9 at D1C808 00:30-3:00.) Bell told Rome to take pictures of "Brother Man" (also referred to as "Beloved" and "Rufus") as he's walking out through the gates. (*Id*. at 7:21-8:30). Bell also referred to his sister telling Rome about their "other co-defendant" (in other calls referred to as "Shawn or Shawny Mack" a known alias for Ross (*See* Ex. 10, Ross Criminal History, p. 1, alias used "Shawny Mac" who "broke seal"; according to Bell, he attempted to speak with Ross after his release from prison and when they spoke, Ross told her that "Reno (Bell) was the cause of it all." (*Id*. at 8:35-9:30.) Ross is Walker's co-defendant who, after he was convicted, "broke seal" when he signed a stipulation admitting his and the others' involvement in the crime and dropped his post-conviction claims in 2009. (*See* Ex. 11).

The next day in a call with his sister – referred to variously as Shantera, Tera or Queen - Bell told her about his call with Rome and that "Rufus" (Walker) was going home with Rome. (Audio Recording of 8/14/20 Call attached as Exhibit 12 at D1C814 1:21-1:54). Shantera told Bell

that their brother Bryan (whom Walker and Rome speak frequently about on the calls) talked to Rufus the day before and Rufus told Rome to tell Bell, Bryan and Shantera that he loves them all, but Shantera expressed misgivings about Walker's feelings toward her because she told "the detectives" something about Walker. (*Id*. D1C814 at 1:49-3:10.) Shantera also mentions that Shawny Mack "put something in paper" about Rufus (likely a reference to Ross's 2009 stipulation implicating Walker, Ex. 11), which Rufus now has. (*Id*. D1C814 at 5:06-5:37.) Bell also asked Shantera to text Rome to setup communication with Rufus because Bell wants to talk to Rufus about his attorneys looking at Bell's case too. (*Id*. D1C814 at 7:08-7:51.)

Bell then called his girlfriend Amelia again and told her Rufus just got out, "this shit just got real" and Rufus is going to get "millions" because he was locked up for 29 years. (Audio Recording of 8/14/20 Call attached as Exhibit 13 at D1C818 1:11-5:20). Bell also told Amelia that he is waiting for Walkers's lawyers to come talk to him. (*Id*.). Bell explained to Amelia that Shantera is scared of Rufus because she was in the police car and pointed Rufus out, but Bell told Amelia there is no need for Shantera to worry, she was just 15 years old when he got locked up and that "Rufus loves Tera." (*Id*. D1C818 at 5:23-9:06.)

On August 15, 2020, in a call between Bell and Rome, Rome hands Walker the phone to talk to Bell for the first time since Walker was released. (Audio Recording of 8/15/20 Call attached as Exhibit 14 at D1C820 00:30-3:15.) In that call, Walker gave Bell his cell phone number and told Bell to give the number to Bell's brother (Bryan) too, and that they can call him anytime. (*Id*.).

In all, there are 31 recorded calls between Bell and Walker in a 16-month time frame. They frequently talk of friends in common and each other's family, say they love each other, call each other "beloved" and "family" and talk about Felicia, the mother of Walker's son from before he went into prison, including a discussion about how Bell set Walker up with Felicia. (*Id*. D1C820

11

at 1:30, 8:40, 15:45, 18:24, 19:45; Ex. 15, Audio Recording of 10/19/20 Call D2C84 at 00:34-36, 8:46-8:51; Ex. 16, Audio Recording of 8/28/2020 Call D1C883 at 19:56-59).**Walker and Bell conspire to create false evidence.**

In addition to the calls detailed above that establish that Walker and Bell were incredibly close and that the relationship could not have formed while they were separately incarcerated, the following calls establish a conspiracy to submit false evidence to the court through a false affidavit signed by Bell on January 14, 2021, which was ultimately used by Walker to obtain his COI. (Ex. 17). The calls discussed here are just some of the calls between Walker and Bell where they discuss Walker's lawyers and what Bell is supposed to tell them about their relationship and the case. Importantly, in multiple calls Walker discusses his attorneys trying to get in touch with Bell and instructs Bell to lie—that Bell should say he does not know Walker and Walker does not know Bell.

On September 4, 2020, Walker told Bell that Walker spoke to his lawyer about what Bell said. (Audio Recording of 9/4/20 Call attached as Exhibit 18 at D1C900 1:18-1:39.) Walker also asked why Bell's sister had not called yet and then expressed his belief that it was because she is reluctant to talk to him and that Bell should tell her that he (Walker) has Bell's interest. (*Id*. at 3:45-5:31.)

On September 8, 2020, in a call with Bell, Walker referenced a letter from his attorney at the Exoneration Project Lauren Myerscough-Mueller sent to Bell on July 22 asking permission to set up an attorney call to allow Bell to talk with them. (Audio Recording of 9/8/20 Call attached as Exhibit 19 at D1C916 at 1:10-2:37.) On September 22, 2020, Walker told Bell that "homey got your letter," a call is supposed to be set up, and Bell should "**remember what I told you. You don't remember me, and I don't know you.**" (Audio Recording of 9/22/20 Call attached as

12

Exhibit 20 at D1C985 1:17-2:29 (emphasis added)). Walker also cryptically talked about "Perry Mason" trying to talk with someone he will not name. (*Id*. D1C985 at 5:50-7:14.)

The next day, September 23, 2020, Bell told Walker that Bell got a call from the attorney today, Walker then told Bell not to say the attorney's name and to use "Perry Mason" instead. (Audio Recording of 9/23/20 Call attached as Exhibit 21 at D1C988 00:30-3:30.) Walker and Bell then discuss Bell walking the lawyers "through that night, … **I don't know you, … I don't know nobody** … [and] I got stuck up." (*Id*. (emphasis added)).

On September 29, 2020, Walker instructed Bell he needs to "stick to [his] guns … like [Walker] told [Bell] a long time ago, … **I don't know you and you don't know me** kind of things" and that Bell "has to keep doing that." (Audio Recording of 9/29/20 Call attached as Exhibit 22 at D2C11 3:54-10:00 (emphasis added)). Walker also told Bell that he needs to talk to Shantera to explain exactly what is going on, and she can "scribe" for Bell and tell him what he needs to know. (*Id*.). Bell responded that he's going to "holler" at his sister to talk to Walker because there is something Walker needs to know unfolded at a meeting. (*Id*.) Bell then tells Walker "that drawing I got from that demo, right, that I'm a vital piece of you regaining a certificate of innocence." (*Id* 7:50-8:30.) Based upon the context, and frequent use of the terms by Bell, as well as others in the calls reviewed, we believe the reference to "demo," also sometime referred to as a "demonstration," refers to a meeting or conversation with another person. The reference to "drawing," also sometimes referred to as a "drawn," refers to an affidavit. Accordingly, in the September 23, 2020 call between Bell and Walker, Bell understands that his affidavit (stating that he and Walker did not know one another) was vital to Walker's ability to get his COI.

On October 7, 2020, Bell again talked to Walker about his discussions with Walker's attorneys, who told Bell they (Walker's attorneys) cannot represent Bell due to a conflict of interest

13

but wanted "documents" from Bell (presumably Bell's affidavit) and how Bell told Walker's attorneys about Ross admitting he, Walker, Bell and Trice committed the crime. (Audio Recording of 10/7/20 Call attached as Exhibit 23 at D2C35 4:09-14:01.)

On October 20, 2020, Bell told Shantera that he talked with Walker's attorneys and they told him Walker cannot sue until he gets a COI. (Audio Recording of 10/20/20 Call attached as Exhibit 24 at D2C85 2:50-5:47.) In a call between Bell and Amelia on October 22, 2020, Bell told her that he spoke with the attorneys who want him to sign an affidavit on behalf of his "rappy" (Walker), and they wanted him to walk them through what the police did. (Audio Recording of 10/22/20 Call attached as Exhibit 25 at D2C86 2:10-3:43.)

The next call – and most critical here – is between Walker and Bell on October 23, 2020, in which Walker asked Bell why he said what he said to Walker's attorneys. (Audio Recording of 10/23/20 Call attached as Exhibit 26 at D2C87 2:03-17:10.) Walker admonished Bell for not sticking with the story that they had previously discussed (*i.e.*, when he spoke with the lawyers, Bell was supposed to tell Walker's lawyers that Walker and Bell do not know each other). (*Id.*) Walker also admonished Bell for telling the lawyers that Walker told "them" where to find weed (suggesting Walker was the one who told Bell and Wicks where to find weed on the date of the Wicks homicide). (*Id.*) Bell defended himself to Walker by saying it was "self-evident" (that Walker and Bell knew each other) because of Thompson's testimony (one of Bell and Wicks' friends who testified at Walker's trial that Walker was at Bell's house on the night of the incident prior to the shooting). (*Id.*) Walker told Bell not to worry about what Thompson said and **"stick to your guns… you don't know me."** (*Id.* at 6:05.) On October 27, 2020, Bell talked about a "mishap" and that he is going to "rectify" it, explaining to Walker that he went in (to talk to Walker's attorneys) "blind" due to Shantera not speaking with Walker, so they were not on "the

14

same page." (Audio Recording of 10/27/20 Call attached as Exhibit 27 at D2C93 00:34-8:25.) Bell repeated his intent to "rectify that error when the opportunity presents itself" in a call with Walker on November 17, 2020. (Audio Recording of 10/27/20 Call attached as Exhibit 28 at D2C127 1:00-1:58.)

On November 21, 2020, Walker told Bell they cannot talk to one another because the calls are monitored. (Audio Recording of 11/21/20 Call attached as Exhibit 29 at D2C165 00:30-00:46.)

**Lies in Bell's affidavit and Walker's answers to written discovery.**

On January 14, 2021, Bell signed an affidavit swearing, in relevant part, to the following:

- "I did not know Keith Walker and he was not with us,"
- "I later learned who Keith Walker was. I did not see Keith Walker before, during, or after the shooting,"
- "I did not know Keith Walker and did not see Keith Walker that night," and
- "I lied about Keith Walker to the police because they forced me to." (Ex. 4).

Based on the calls detailed above, Bell's affidavit is false and shows that Bell followed Walker's instruction to lie. The calls establish that Walker and Bell knew one another before the murder. In fact, Bell introduced Walker to Felicia, the mother of his child. And, they remained in contact with one another throughout their time in prison (Bell knew exactly when Walker was going to be released from prison) and communicated regularly after Walker's release, discussing exactly what Walker wanted Bell to say to his lawyers in order to procure his COI, and discussing that Bell needed to "rectify" his statement to Walker's lawyers after the initial "mishap."

Additionally, the calls also establish that Walker's verified interrogatory responses regarding Walker's relationship with Bell are false. Specifically, Walker swore that:

- "Bell, Ross and Trice did not know Plaintiff, and Plaintiff did not know them" (Ex. 30, Answer to Halloran Interrog. No. 8);
- "Plaintiff states he had no communication or relationship with Marcus Bell, Tyshawn Ross, or Yusef Price [sic] prior to his arrest. He did not know who any of the aforementioned individuals were and, to the best of his recollection and

15

knowledge, had never met them before." (Ex. 31, Walker's Answer to McWeeney Interrog. No. 1).

In addition, despite discovery requests and a subpoena to the Exoneration Project seeking communications with witnesses and the CCSAO,, Defendants have received no records of communication between Walker or his lawyers with any of his former co-defendants or any other third party. (*See e.g.*, Ex. 32, Pltf's Responses to Defendant Officers' Requests to Produce, No. 5; Ex. 33, Subpoena to Exoneration Project). These calls establish that there were such communications with multiple third parties, including Bell, but clearly others like Bell's sister who was facilitating communications for the affidavit and the Exoneration Project team in contact with Bell and others. Walker and his lawyers have no basis to fail to produce records of these communications 2 years into the litigation.

Walker's and Bell's lies go to the heart of this case. Walker claims that he was framed for a crime for which he was not even present and that statements given by him and his co-defendants to the contrary are evidence that all the statements were fabricated and coerced. To support those claims, in his Interrogatory responses Walker stated under penalty of perjury that he didn't even know his co-defendants they didn't know him and that he had no nicknames. (Ex. 30, Pltf's Responses to Halloran's First Interrogatories, No. 1; Ex. 34, Walker MTSS Testimony, H165, ¶¶22-23, H166 ¶23 – H167¶1) Based on the Bell calls, he also took an active role in securing evidence for his COI petition, knowing the contents of Bell's 2021 affidavit and argument in his pleadings premised upon it was false. The court stated that it relied on the affidavits to grant him the COI. (*See* Ex. 35, Jan 1, 2022 ROP, p. 5 ¶¶10-22). And, Walker will likely rely on the COI to prove his innocence in this lawsuit. Now that he has been caught, Walker should not be allowed to walk away from these lies through a dismissal without prejudice, only to refile in a year to the prejudice of defendants.

Defendants have already lost the opportunity to depose a key witness – Ross - Walker's co-defendant. Ross signed a 2021 affidavit like Bell that Walker submitted with his COI petition recants his 2009 stipulation admitting to his, Walker, Bell and Trice's involvement in the murder. Ross, has was killed just a few months after signing his affidavit in a gang-related shooting, and Defendants are forever prevented from confronting him about the circumstances of the 2021 affidavit or the 2009 stipulation that Walker now frames as a "deal" to get him released from jail. The same type of evidence may be lost if Walker is allowed to dismiss this case without prejudice and later refile.

Defendants will be unfairly prejudiced if discovery is delayed, preventing Defendants the timely ability to develop evidence contained in Bell's calls further (including depositions of Bell, Shantera, his brother Bryan, Amelia and Rome). The delay could potentially prevent Defendants from exposing a greater attempt to manipulate the facts and evidence in this case, including evidence relating to Ross and Trice too. These calls establish Walker manipulated the facts and evidence before this case filed, giving him another year to possibly do so again cannot be allowed.

**B. *Pace* Factors weigh in favor of dismissal with prejudice, or alternatively, this Court should impose certain conditions in lieu of a dismissal with prejudice.**

**i.      Dismissal with prejudice is appropriate.**

There can be no doubt that Walker's Motion's lack of *any* explanation for seeking to dismiss his case now, over two years after it was filed, is the most extreme example of an insufficient explanation for why a voluntary dismissal is sought. *Pace*, 409 F.2d at 334; *see also Tyco Labs*., 627 F.2d at 57 (observing that proffered reasons of refiling in a different court were "less than overpoweringly persuasive," but that it was not an abuse of discretion for the district court to accept those explanations). Here, again, there is absolutely no explanation offered to

17

persuade the Court a voluntary dismissal without prejudice should be allowed. On the other hand, the prejudice of a dismissal without prejudice to Defendants will be great.

The events in this case occurred over 30 years ago. One defendant, Maslanka has already died in the pendency of this litigation before he was deposed. The individual defendants still alive, most of whom are well into their late 60s and 70s, and some of whom have had health issues during the pendency of this case, deserve the opportunity to vindicate themselves of the very serious allegations made against them in this case. A possible delay in these proceedings of up to a year will further hamper their defense, already made difficult by the lengthy passage of time.

Besides the prejudice already discussed above in relation to the Bell, key witnesses such as Ross, Walker's criminal defense attorney at trial, and two of Wicks' three friends (Barnes and Burkwest who were present that night and testified about Bell and Walker's actions on the night of the incident prior to Wicks being shot and after) have all died prior to this case even being filed. Witnesses have been difficult to locate and serve, and memories have faded and will continue to fade.

Defendants have also expended substantial public resources for over two years to defend this action. The document production alone has encompassed over 140,000 documents, which includes the pleadings and transcripts from three separate criminal trials, criminal defense and prosecutorial files extending through the post-conviction proceedings, and police reports from a homicide investigation that occurred over three decades ago, all of which had to be reviewed by four sets of defense attorneys and reviewed by long retired Police Officers and Assistant State's Attorneys. Each Defendant answered the 346-paragraph Complaint and numerous rounds of written discovery. Those Defendants who have been deposed (Golubiak, Griffin, Byrne and McDowell-Simmons) endured seven full hours on the record of questioning about events 30-plus

18

years in the past. Significant efforts have also been made by the four sets of Defendants' counsel to track down witnesses, including the paramedics involved in transporting Wicks, non-defendant police officers involved in the investigation, prosecutors involved in the various criminal proceedings and Wicks' remaining family members.

Walker attempts to minimize this extensive outlay of resources needed to defend this action by simply stating the dismissal is sought "before the majority of party depositions have occurred, in advance of the close of fact discovery and before any motions for summary judgment having been filed." This does not in any way minimize the prejudicial effect a dismissal without prejudice would have on Defendants. Discovery was set to end next month. So yes, the motion was filed before the close of fact discovery, but not by much.

Indeed, should this case be refiled in a year, many of the tasks in reviewing documents and preparing for depositions will need to be redone, as the substantial passage of time will render much of the current preparation subject to the frailty of memories that are over a year old. This Response has also forced Defendants to disclose their strategy relating to review of 279 hours of Bell's prison calls, summarizing those calls in advance of depositions thereby giving Walker a preview he was not otherwise entitled. The significance of these calls cannot be overstated. Indeed, recorded jail calls exposing lies in affidavits and civil discovery have even led to the dismissal of a Section 1983 case as a sanction for abuse of the litigation process. *See, e.g.*, *Bishop v. White*, 16 C 6040, 2023 WL 35157 (N.D. Ill, Alonso, J.).

The *Pace* factors were not intended to be a checklist, but rather factors to aid the court in assessing a plaintiff's request to voluntarily dismiss a case in relation to the resulting prejudice to the defense. *Tyco Labs.*, 627 F. 2d at 56 (*Pace* factors are "a guide," not a "mandate"); *Stern*, 452 F.2d at, 213 (the court should use its discretion to "prevent voluntary dismissals which unfairly

19

affect the opposing party"). Defendants' efforts and expenses in preparation of this three decades old case for trial has been great and dismissal without prejudice this far into the litigation is prejudice in the extreme, as much of that effort and expense could be lost forever and to the extent it is not, it will need to be repeated in large part if this case is allowed to be refiled in a year. For these reasons, Walker's request to dismiss this case without prejudice should be denied.

          **ii.**      **In the alternative, a dismissal without prejudice that includes certain terms and conditions is warranted.**

In the alternative, should this Court conclude that a dismissal with prejudice is not warranted, this Court should nonetheless impose conditions on a dismissal without prejudice, should that still be desired by Walker, in order to minimize the unfair effect the dismissal will have on Defendants. Specifically, in addition to completion of the limited Bell-related discovery Magistrate Judge Fuentes has allowed to proceed while this Motion is pending (*see* Dkt. 252), Defendants request that this Court impose the following conditions: (1) Walker, his counsel and their agents have no contact with witnesses or conduct any additional investigation during refile period; (2) Walker be given no more than 3 months to refile the case; (3) Defendants be awarded their costs and fees; (4) Walker and his counsel be required to preserve all communications with third party witnesses as well as internal notes, memos, and communications reflecting statements to counsel, (5) an acknowledgement by Walker that he lied in his sworn answers to interrogatories where he denied knowing Bell both before and after Wicks' murder and that he lied when he denied his nickname is Rufus, (6) Walker be required to notify the Illinois Attorney General and Circuot Court who ruled on the petition for COI that he lied, and (7) Walker be barred from using the COI if this case is refiled.

These conditions are all within the Court's discretion. Rule 41(a)(2) grants a district court broad discretion to impose conditions on the voluntary dismissal of a claim. *See Tyco Labs,* 627

F. 2d at 56. The Court can impose limits on discovery and decrease the amount of time allotted to refile the matter as conditions of a voluntary dismissal pursuant to Rule 41(a)(2). *See Parker v. Freightliner Corp.*, 940 F. 2d 1019 (7th Cir. 1991) (concluding limitations on discovery is a permissible term when granting a voluntary dismissal without prejudice); *A.P. v. Abbot Labs, Inc.*, 2019 U.S. Dist. LEXIS 229353 (S.D. Ill. Aug. 27, 2019) (granting dismissal without prejudice and requiring plaintiff to refile action within 30 days); *S.B. KinderCare Learning Ctrs., LLC*, 815 F. 3d 150 (3rd Cir. Mar. 10, 2016) (finding district court did not abuse its discretion by shortening the refiling deadline as a condition of the voluntary dismissal under Rule 42).

WHEREFORE, Defendants respectfully request that if the Court grants Walker's Motion seeking to voluntarily dismiss this case that it do so with prejudice, or, at the very least, that the Court impose conditions upon a dismissal without prejudice as enumerated above to minimize the prejudice to Defendants that a dismissal without prejudice would cause.

Date: October 20, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Daniel Noland* | /s/ *Stacy A. Benjamin* |
| **Special Assistant Corporation Counsel for the City of Chicago and Anthony Schumann as Special Representative of Defendant Leroy Martin** | **Special Assistant Corporation Counsel for Daniel McWeeny, John Halloran, Anthony Maslanka, William Moser, Louis Caesar, Thomas Brankin, Robert Lane, John Smith, David Golubiak, John Griffin, and John Byrne, together with Douglas Stalley as Personal Representative for the Estate of Jon Burge, Susan McCann as Special Representative for the Estate of John McCann, Geri Lynn Yanow as Special Representative for the Estate of Nick Crescenzo and the Estate of Craig Cegielski** |
| Terrence Burns<br>Daniel Noland<br>Paul Michalik<br>Reiter Burns, LLP<br>311 S. Wacker Dr. Suite 5200<br>Chicago, IL 60606<br>(312) 982-0090<br>dnoland@reiterburns.com | |
| | Eileen E. Rosen<br>Stacy A. Benjamin<br>Brittany D. Johnson |
| **Defendants Nicholas Ford and Michelle McDowell Simmons**<br>By: *James M. Lydon* | |

James M. Lydon
Michael F. Iasparro
Michael C. Stephenson
Hinshaw & Culbertson, LLP
151 N. LaSalle St., Ste. 2500
Chicago, Illinois 60606
(312) 704-3000
mstephenson@hinshawlaw.com

Jessica Zehner
Rock, Fusco & Connelly, LLC
333 W Wacker Drive, Floor 19
Chicago, Illinois 60606
(312) 494-1000
sbenjamin@rfclaw.com

***Defendant Byrd***
/s/ *Brian P. Gainer*
**One of the Attorneys for Defendant Byrd**

Brian P. Gainer
Lisa M. McElroy
JOHNSON & BELL, LTD.
33 W. Monroe St., Ste. 2700
Chicago, Illinois 60603
(312) 372-0770
gainerb@jbltd.com

22