# Exhibit

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEITH WALKER,                        )
                                     )
              Plaintiff,             )
                                     ) Case No. 21 CV 4231
         v.                          )
                                     ) Honorable Marvin E.
ADMINISTRATOR OF THE ESTATE          ) Aspen
OF FORMER CHICAGO POLICE             )
DEPARTMENT COMMANDER JON             ) Magistrate Judge
BURGE, et al.,                       ) Fuentes
                                     )
              Defendants.            )


VOLUME I, PAGES 1-310


        The video recorded deposition of MARCUS

LAMAR BELL, stenographically reported by Donna M.

Urlaub, Illinois Certified Shorthand Reporter

No. 084-000993, on Wednesday, November 22, 2023,

at Room 1838, Dirksen Federal Building, 219 South

Dearborn Street, Chicago, Illinois.

        APPEARANCES:

             SAMUELS & ASSOCIATES, LTD., by
             MS. JEANETTE S. SAMUELS
             (53 West Jackson Boulevard, Suite 831
              Chicago, Illinois  60604
              872.388.8726
              sam@chicivilrights.com)
                appeared on behalf of the plaintiff;

Page 2

APPEARANCES: (Cont'd)
ROCK FUSCO & CONNELLY, LLC, by
MS. STACY A. BENJAMIN
MS. BRITTANY D. JOHNSON-DELGADO
(333 West Wacker Drive, 19th Floor
Chicago, Illinois 60606
312.494.1000
sbenjamin@rfclaw.com
bjohnson@rfclaw.com)
appeared on behalf of the defendants
Administrator of the Estate of
Louis Caesar, John Byrne, John
Halloran, Anthony Maslanka, Daniel
McWeeny, William Moser, Thomas
Brankin, David Golubiak, J. Griffin,
Robert Lane, Administrator of the
Estate of Jon Burge, John Smith,
Administrator of the Estate of Craig
Cegielski, and Administrator of the
Estate of Nick Crescenzo;
REITER BURNS, LLP, by
MR. DANIEL MATTHEW NOLAND
(311 South Wacker Drive, Suite 5200
Chicago, Illinois 60606
312.982.0090
dnoland@reiterburns.com)
appeared on behalf of the defendant
City of Chicago, Administrator of the
Estate of LeRoy Martin, Anthony
Schumann;

HINSHAW & CULBERTSON LLP, by
MR. JAMES MATTHIAS LYDON
(151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
312.704.3000
jlydon@hinshawlaw.com)
appeared on behalf of the defendants
Nicholas Ford and Michelle McDowell
Simmons;

Page 3

APPEARANCES: (Cont'd)

JOHNSON & BELL, LTD., by

MS. ALEEZA F. MIAN

(33 West Monroe Street, Suite 2700

Chicago, Illinois 60603

312.372.0770

miana@jbltd.com)

appeared on behalf of the defendant

Doris Byrd.

ALSO PRESENT:

MS. RACHEL WELLING

Certified Legal Video Specialist

Urlaub Bowen & Associates

Page 4

I N D E X

Witness:                                        Page

    MARCUS LAMAR BELL

        Examination by:

            Ms. Benjamin ............. 7


        E X H I B I T S

No.   Description                 Marked/Referenced

  1  IDOC Internet Inmate Status BO 2922
     Smith, Brian.......................... 29
  2  June 5, 1991 Statement of Marcus Bell.. 156
  3  Motion to Quash Arrest and Suppress
     Evidence.............................. 192

  4  May 19, 1993 Transcript of Report of
     Proceedings - Motion to Suppress....... 193
  5  Motion to Suppress Statements.......... 201
  6  September 20, 1994 Transcript of
     Report of Proceedings.................. 201

  7  Pan Search Report..................... 238

  8  Inmate Comprehensive Messages Report... 260

     (Exhibits attached/scanned.)

Page 5

VIDEO TECHNICIAN: This is the beginning of media unit one and we are now on the video record at 9:37 a.m. this is the videotaped deposition of mark us bell being taken on November 22nd, 2023.

We are located at 219 South Dearborn Street, courtroom 1838, Chicago, Illinois.

This deposition is being taken on behalf of the defendant in the matter of Keith Walker versus the administrator of the Estate of former Chicago Police Department Commander Jon Burge, et al. The case number is 121 cv 4231, filed in the United States District Court for the Northern District of Illinois, Eastern Division.

My name is Rachel Welling, Certified Legal Videographer representing Urlaub Bowen & Associates, with offices at 20 North Clark Street, Suite 600, Chicago, Illinois.

The court reporter today is Donna Urlaub, also of Urlaub Bowen & Associates.

Counsel please identify yourselves for the video record and the parties which you represent.

MS. BENJAMIN: Good morning again, Mr. Bell.

MR. BELL: Good morning.

Page 6

MS. BENJAMIN: My name is Stacy Benjamin. I represent the individual defendant police officers with the exception of Byrd in this matter.

As my colleague.

MS. JOHNSON-DELGADO: Brittany Johnson-Delgado, also for the defendant officers.

MR. NOLAND: Good morning, Mr. Bell. My name is Dan Noland. I'm an attorney for the City of Chicago and the estate of LeRoy Martin.

MR. BELL: Okay.

MS. SAMUELS: Good morning. My name is Jeanette Samuels. I'm Keith Walker's new attorney.

MR. BELL: Okay.

MR. LYDON: Good morning. Jim Lydon, last name spelled L-y-d-o-n, on behalf of defendants Ford and Michelle McDowell Simmons.

MS. MIAN: Good morning. Aleeza Mian for Sergeant Byrd.

VIDEO TECHNICIAN: Will the court reporter please swear in the witness.

(Witness sworn.)

Page 7

MARCUS LAMAR BELL called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. BENJAMIN:

Q. Could you state your full name and spell it for me.

A. Marcus Bell, M-a-r-c-u-s, B-e-l-l.

Q. Do you have a middle name?

A. Lamar.

Q. Can you spell that?

A. L-a-m-a-r.

Q. Do you know why you're here today?

A. No, ma'am.

Q. Okay. You are here because you have been subpoenaed for a deposition and the court entered a writ to bring you up to Chicago for that deposition. It is in the matter of Keith Walker versus City of Chicago, as you heard it read earlier.

Have you ever given a deposition before?

A. No.

Q. Okay. So on -- it's both similar to a

Page 8

court proceeding and dissimilar. As you see, there's a court reporter next to you. You've been to court reporter proceedings so you know that that's somebody who's taking down my questions your answers and any objections or any other statements that are made.

So the most important thing to remember about that is that we not talk at the same time. So can you remember to do that?

A. Yes.

Q. Okay. Great.

And the other important thing for the court reporter and for the transcript that will eventually be made from this deposition is that you give verbal answers. So I shake my head yes, no, you know what I'm saying, you can verbally read that, but that doesn't translate to a transcript. So go ahead, shake your head, however you want, but also verbalize your answer. And if I, you know, get pesky about it and say, oh, no, out loud, out loud, I'm not trying to be rude or anything to you, I'm just trying to make our transcript readable for when we're done when, you know, months later when we want to look back at this.

Page 9

The videographer is also taking down your video. I think -- we don't have a Zoom, okay, so forget that; there's nobody else watching from Zoom.

There may be objections to my questions. There's no judge here, as you can see, to rule on any objections. So they're typically just made for the record, and you still have to give an answer after the objection is made.

The -- as -- so that is a little bit how a deposition is different from courtroom proceedings. How it's similar is that you were sworn in, you just swore to tell the truth. The same oath that you would give when you're testifying in court applies equally here in a deposition.

Do you understand that?

A. Yes.

Q. Okay. Are you prepared today to answer my questions?

A. It depends on what asks -- how many questions you have.

Q. Okay. So you are entitled to questions that you understand. So if I ask something --

Page 106

A. What did I sign?

Q. Yes.

A. The note they wrote, they wrote out.

Q. Okay. I'm going to mark as Exhibit 2 --

VIDEO TECHNICIAN: Counsel, we're just short of two hours, so just let me know when you --

MS. BENJAMIN: You know, this is probably a good time to take a break. While I'm taking care of this exhibit, everybody can stretch and we can decide if we're going to move or what we're going to do.

VIDEO TECHNICIAN: We're off the video record at 11:34 a.m.

(Recess taken.)

VIDEO TECHNICIAN: We're back on the video record at 11:47 a.m.

BY MS. BENJAMIN:

Q. Mr. Bell, as a prisoner in the Illinois Department of Corrections, you have the ability to make telephone calls; correct?

A. Yes.

Q. And when you make those phone calls, do you know that they are recorded?

A. Yes.

Page 107

Q. And you are told that they are recorded before each call; correct?

A. Yes.

Q. Okay. And you also have the ability to use electronic communications, like email or texting, whatever you want to call it.

A. Yes.

Q. Okay. Are you aware that I have subpoenaed all of your phone calls from 2019 to about a couple weeks ago?

A. No, I wasn't aware.

Q. Okay. Now, now that you are, is there anything about your testimony this morning that you'd like to change?

A. No.

Q. So it's still your testimony that you don't know Keith Walker?

A. Yeah, I told you I done known Keith Walker, I mean, for -- when we got arrested, when we was fighting the case.

Q. How was it that you got to know Keith Walker after your arrest?

A. We was in the County Jail together.

Q. As co-defendants, aren't you kept

Page 108

separate?

A. No.

Q. Oh. Were you cellmates with him?

A. No.

Q. How were you able to interact with Keith Walker at Cook County Jail?

A. When we go to court, we in the same bullpen.

Q. So every time you went to court, you would be friendly with your co-defendant in the bullpen?

A. We do -- we go to court together.

MS. BENJAMIN: Okay. We need to take a break.

VIDEO TECHNICIAN: Okay. We're off the video record at 11:49 a.m.

(Telephonic colloquy with Magistrate Judge Fuentes follows:)

JUDGE FUENTES: Hello, Judge Fuentes.

DEPUTY KNIGHT: Hi, Judge. It's Lauren. I'm calling you from the courtroom.

JUDGE FUENTES: Okay. So am I audible on speaker?

Page 109

DEPUTY KNIGHT: Can the cour- -- can you hear him?

COURT REPORTER: He's a little faint.

DEPUTY KNIGHT: A little faint?

Judge, it might just be easier if I call you from my cell phone and have it over by the court reporter.

JUDGE FUENTES: Okay. I'll stand by.

DEPUTY KNIGHT: Okay. Thank you.

(Brief pause.)

JUDGE FUENTES: This is the judge. Am I more audible now?

COURT REPORTER: Yes, sir. Thank you.

MS. BENJAMIN: Yes, we can hear you, Judge.

JUDGE FUENTES: Great. I want to be sure we're on the record with the court reporter transcribing. Let me know when we are.

COURT REPORTER: Yes, we are.

DEPUTY KNIGHT: All set, Judge.

JUDGE FUENTES: Okay. Terrific. And thank you very much to our court reporter.

So this is Magistrate Judge Fuentes, and breaking in on the deposition just for a moment to advise the parties of a few developments today.

Page 110

One of them being that with today being the day before the Thanksgiving holiday, I was advised today that the building is somewhat, somewhat lesser staffed than it might typically be. And what that does is just make it imperative for us to communicate a time when the marshal service and/or county sheriffs would know that the deposition is going to wrap up or the deposition questioning for today is going to wrap up because we -- we just have some limitations on how late it could go.

So, Ms. Benjamin, the deposition being taken at your instance, can you tell me anything about what you -- how much time you think you will need today to complete the deposition, if you think it can be completed today?

MS. BENJAMIN: I -- at the rate we're going now, Judge, I do not believe it will be completed today. We do intend to take the full seven hours. There are a lot of audio calls and electronic communications that we are going to be going through. And we have to take a 45-minute break so the prisoner can go and get lunch and use the facilities.

Page 111

JUDGE FUENTES: Right.

MS. BENJAMIN: So I don't -- the cutoff time at 6:00 o'clock, and that seemed kind of late, considering the building is going to be nearly empty, I can't guarantee that I'm going to be finished.

JUDGE FUENTES: Okay. That's helpful for me to know because we talked about the cutoff time being 6:00 o'clock, and, I mean, that's kind of a time when court proceedings in the building are supposed to stop. It was reinforced by a memo that came out yesterday from the chief judge to all of the court members.

But with today being a little bit of a different kind of day, and with now knowing that even if we went to 6:00 o'clock, you're going to have to resume this deposition at a later time, that tells me that we need to give the folks in the building a little bit of relief, and not have them here until 6:00 o'clock.

So, Ms. Benjamin, what I would like to do is have you complete your questioning by 4:30 today. Does that impose a hardship, knowing that you'll have to come back anyway?

Page 112

MS. BENJAMIN: No.

JUDGE FUENTES: Okay. Ms. Samuels, are you there?

MS. SAMUELS: Yes.

JUDGE FUENTES: Any objection to cutting off the questioning at 4:30 today?

MS. SAMUELS: No, your Honor.

JUDGE FUENTES: Okay. So that will be the plan. We'll -- questioning will stop at 4:30. The deposition will not be completed, but will adjourn, and then the parties will confer about when, where, and how it gets resumed.

Sound good, Ms. Benjamin?

MS. BENJAMIN: Yes, it does, your Honor.

JUDGE FUENTES: Ms. Samuels?

MS. SAMUELS: Yes, your Honor.

JUDGE FUENTES: I couldn't hear you very well. Sorry.

MS. SAMUELS: Yes, your Honor.

JUDGE FUENTES: Okay. Very helpful. Thank you.

So what we'll do is I'll get an order to Ms. Knight so she can enter it and it will all be formal, and I'll also ask Ms. Knight to

Page 113

communicate to our friends in the marshal service that we're going to be done at 4:30 today.

And that's -- that's all. So thank you. I won't take any more of your time. You may continue with your deposition.

So, court reporter, please mark this colloquy as an on-the-record colloquy that was had with the Court. And then I'll ask the parties, whoever's -- I guess it's Ms. Benjamin taking this deposition -- if you would please have the court reporter prepare an expedited transcript of this colloquy and then file it on the docket, because everything we do in the court, of course, is public. Okay?

COURT REPORTER: Yes.

JUDGE FUENTES: All right. Thanks very much. And I will let everybody go. And if I don't talk to anyone today here, I just wish everyone a good Thanksgiving. So I'm going to disconnect. Thank you.

MS. BENJAMIN: You know what, Judge, can I just add one more thing?

JUDGE FUENTES: Yes, quickly.

MS. BENJAMIN: Okay. I would just like to

Page 114

say that Mr. Bell was in the room to hear this portion of the tran- -- or the colloquy with the Court. So I will address that with him in rescheduling after we get off the phone with you, but I just want it noted for the record that he was present for this.

JUDGE FUENTES: Yeah; and I -- I knew he was, so I tried to kind of make my remarks circumspect.

MS. BENJAMIN: Okay.

JUDGE FUENTES: So I think that's fine. Okay?

MS. BENJAMIN: Thank you.

JUDGE FUENTES: All right. Thank you.

MS. KNIGHT: Okay. All set. Thank you all.

(Discussion off the record.)

VIDEO TECHNICIAN: We're back on the video record at 11:55 a.m.

BY MS. BENJAMIN:

Q. All right. We just took a break to have a brief hearing with the judge in this matter who, because of the holiday, has expressed to us that we are not going to have sufficient time to finish your deposition today.

And I think earlier, Mr. Bell, you had told us that you anticipate being released from

Page 115

the Illinois Department of Corrections in early December, right?

A. Yes.

Q. Okay. And do you agree to cooperate with us in rescheduling to finish your deposition once you are released from the Illinois Department of Corrections?

A. Yes.

Q. Okay. And I can promise you we don't have to come back to the courtroom for that.

A. Okay.

Q. Okay. And so I did not ask you this at the beginning of the deposition, but I should ask you now. How would we be able to get ahold of you when you are released if you don't know where you're going?

A. I have a cell phone number.

Q. Okay. What's your cell phone number?

A. ▮ -- I mean, ▮▮▮▮.

Q. Okay. And if we are unable to reach you on that cell phone number, can we reach you through any of your family members?

A. Yes.

Q. Either Shantera or Stephanie?

Page 116

A. Shantera.

Q. And what is Shantera's number?

A. ▮▮▮▮.

Q. Thank you.

Okay. All right. Before we took the break, we were talking about five detectives in the room with you, and you were being shocked too many times to count on your arm, back, and legs.

A. Yes.

Q. And after that, you agreed to sign whatever they asked you to sign.

A. Yes.

Q. And is that correct then that you signed some document after that?

A. Yes.

Q. Okay. Could you -- can you describe that document in any way?

A. Paper about the size of that.

Q. Okay. So standard size paper?

A. Yes.

Q. Was it multiple pages?

A. I believe so.

Q. And did you sign your name in multiple places?

Page 117

A. I believe so.

Q. And did you -- was there any female detectives in the room?

A. I don't -- I don't recall.

Q. Was there a state's attorney in the room?

A. Yes.

Q. When did the state's attorney get there?

A. The day I went to -- to make -- the day I was submitted to the County, to County Jail. That was on the 5th.

Q. Okay. So --

A. June the 5th.

Q. You signed the paper for the detectives before the state's attorney got there.

A. No.

Q. Okay. So the incident you're describing to me --

A. Yes.

Q. -- where five detectives are shocking you --

A. Yes.

Q. -- and then you signed a statement, how long after that shocking happened that you

Page 306

BY MS. BENJAMIN:

Q.   Somebody tried to jump on what?

A.   Somebody tried to jump on her.

Q.   Jump on her like just randomly she was attacked on the street?

A.   She said during the time I got locked up, the detectives surround the house, and they thought she said something, but she was asleep. And they -- they tried to jump on her.

Q.   Who are "they"?

A.   I don't know. I was locked up.

Q.   Keith Walker tried to jump on her?

A.   Who?

Q.   Keith Walker tried to jump on her?

A.   I don't know.

Q.   Was your sister, Shantera, afraid of Keith Walker when he was released from prison?

A.   No.

Q.   She never communicated to you that she was afraid to talk to Keith Walker?

A.   What -- what do she got to talk to Keith Walker for?

Q.   She didn't have any fear that Keith Walker might hold a grudge against her for having

Page 307

talked to the police about him?

A.   I didn't even know she talked to the police.

Q.   Rewind that a little bit; let's listen to that again.

(Audio played.)

Q.   So Jerome or Brian told Rufus what Shantera said.

A.   I don't know what she said.

Q.   Okay.

(Audio played.)

Q.   The detectives surrounded her house and the Felecia told them that.

What's that mean to you when your sister told you about that?

MS. SAMUELS: Objection; speculation, foundation.

THE WITNESS: Like she said, the detectives surround the house, and she said somebody name Felecia told Rufus that. So I don't -- I don't know what come of that.

BY MS. BENJAMIN:

Q.   Felecia was Rufus's girlfriend back in June 1991, wasn't she?

Page 308

A.   I don't know Felecia.

Q.   Your sister Shantera knows Felecia.

A.   Yeah.

Q.   Do you know who the Felecia that your sister Shantera is talking about?

A.   I don't know.

Q.   She lived right down Justine, a couple doors down from you. Did you know her?

A.   No, I didn't know her.

Q.   Did your sister ever tell you that she provided police information about Felecia to the police?

A.   How she was gonna do that? She was asleep.

Q.   Are you talking about that she was asleep when the police came to your house --

A.   Yes.

Q.   -- on June 3rd?

A.   She was asleep when Erik, John, Shawn, and them was on my porch that day. They were asleep until the police came and woke them up.

Q.   Your sister Shantera --

A.   That's what she talking about the police surrounded the house, and she saying Felecia

Page 309

told something, and they tried to jump on her.

Q.   Isn't it true that Shantera told the police -- Shantera helped the police look for Rufus?

A.   I don't know.

Q.   Have you ever talked to your sister about Keith Walker's involvement in this crime?

A.   No.

Q.   Have you ever talked to her about whether or not she helped the police try and find Keith Walker?

A.   I didn't know she did that.

MS. BENJAMIN: All right. It's 4:30. I don't want to try and play another section. I'd rather stop here.

Let me just -- for the record, we were on a call December -- I'm sorry -- August 14, 2020, disk one, 814. It was a call between you and Shantera. For where we left off.

Thank you everybody. We're going to have to -- because I think they're closing up the building on us, so we will end the deposition now, if there's anything that anybody needs to say.

MS. SAMUELS: No.

MS. BENJAMIN: All right.