**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEITH WALKER,<br>　　　Plaintiff,<br><br>　　　　v.<br><br>ADMINISTRATOR OF THE ESTATE OF<br>FORMER CHICAGO POLICE<br>DEPARTMENT COMMANDER JON<br>BURGE, *et al.*,<br>　　　Defendants. | Case No. 21 C 4231<br><br>Judge Sunil R. Harjani<br><br>Magistrate Judge Gabriel A. Fuentes |

**PLAINTIFF'S OPPOSED MOTION FOR DEPOSITION ACCOMODATIONS**

Plaintiff, KEITH WALKER (hereinafter, "Plaintiff"), by and through his attorneys, PERL & GOODSNYDER, LTD., files his Opposed Motion for Deposition Accommodations. In support thereof, Plaintiff states as follows:

**INTRODUCTION**

As an initial matter, Defendants request to conduct a Rule 35 examination on Plaintiff prior to the start of expert discovery was due to Plaintiff's May 14, 2025 request for accommodations for his deposition. (See Dkt. 415 at Pages 2-3). As expert discovery has not yet started, nothing herein shall be construed as Plaintiff waiving his right to disclose an expert to rebut Defendants' Rule 35 examiner, Dr. Klipfel's findings in full. The purpose of this Motion is solely limited to the narrow issue of what accommodations are necessary for Plaintiff's deposition to proceed.

**FACTUAL BACKGROUND**

Plaintiff spent nearly 30 years in maximum-security prison – 17 of those years in solitary confinement – for a crime he did not commit. In this case, Plaintiff alleges that the Defendants fabricated and suppressed evidence and physically and psychologically abused him, his co-

defendants, and other witnesses to obtain statements falsely implicating Walker in the shooting of Shawn Wicks. In 2014, Plaintiff was examined by Dr. Antonio Martiez, who determined that, based on "[t]he test results, the review of the records, the comparison between presented stimulus and reaction and all other contextual observations previously discussed points towards the conclusion with clinical certainty that the subject Mr. KEITH Walker was torture (sic) and that he suffered probably during the first ten years of his incarceration ████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████" (*See* Dkt 487, Exhibit 2). Prior to his torture, Plaintiff had no history of suffering from any mental health related ailments.

In 2025, when the parties were scheduling Plaintiff's deposition, Plaintiff engaged his treaters to ensure that his deposition did not jeopardize his well-being. In response, Plaintiff's treater, Lauren Hersch, LCSW, sent correspondence identifying the following reasonable accommodations necessary to protect Plaintiff from experiencing re-traumatization at his deposition:

- Mental Health Interpreter – to ensure that Plaintiff's "statements are responses are not compromised by psychological dysregulation";
- Time limitation – not to exceed three (3) hours in duration on any given day;
- Scheduled breaks – a ten (10) minute break built in half-way through the deposition;
- As-needed breaks – should Plaintiff feel overwhelmed or dysregulated; and
- Ability to terminate the deposition prior to the three (3) hour mark should Plaintiff become too emotionally dysregulated to continue and resume at a later date.

(*See* Dkt 415, Exhibit 4). Ms. Hersch's correspondence prompted litigation before the Court. Ultimately, the Court granted Defendants leave to file a Motion for Rule 35 examination, prior to the start of expert discovery.

2

On September 8, 2025, Defendants filed a Joint Opposed Motion for a Rule 35 Examination of Plaintiff. *Id*. Thereafter, Plaintiff filed his Response to Defendants' Joint Opposed Motion for a Rule 35 Examination of Plaintiff. (Dkts. 438, 444). On October 14, 2025, this Court entered a minute order providing, in relevant part, as follows:

> Defendants' motion for Rule 35 examination (doc.#s [415], [417]) is granted in part. Defendants have asserted a valid basis for a Rule 35 examination for the reasons set forth in the motion. Moreover, plaintiff does not oppose the examination (doc. #[438]), but only defendants' selection of the particular examiner. The Court too is concerned about the possibility of re−traumatization during the examination, but despite the proposed examiner's lack of training in dealing with torture victims, the examiner is a clinical neuropsychologist bound by medical ethics including that the doctor must do no harm. The Court does not see plaintiff having set forth an adequate basis at law to reject Dr. Klipfel as the examiner. However, the motion is granted "in part" insofar as the Court will accommodate plaintiff's request that one of his treaters, be it LCSW Hersh or Dr. Doyle, be permitted to attend the examination to safeguard plaintiff's well−being. Further, the parties are ordered to arrange a pre−examination conference between Dr. Klipfel and plaintiff's attending treater so that the treater may understand the overall plan for the examination in advance, so it may go more smoothly, and so that Dr. Klipfel may make any necessary assurances as to the safety of the examination.

(Dkt. 441).

On December 30, 2025, a pre-examination conference took place between Dr. Doyle and Dr. Klipfel, during which Dr. Klipfel refused to provide Dr. Doyle with the specific psychological and cognitive measures that she planned to use during the examination, nor the process of selection administration, interpretation, or integration of the results, preventing Dr. Doyle from gaining an understanding as to the overall plan for the examination. Accordingly, on January 25, 2026, a second conference took place involving the professionals and counsel for the parties. During the January 25, 2026 conference, Dr. Klipfel provided limited additional information, but remained unwilling to provide the specific information necessary for Dr. Doyle to gain an understanding as

to the overall plan for the examination. Nevertheless, considering the Court's acceptance of Dr. Klipfel as an examiner and the need to move the case forward, Plaintiff had no choice but to permit the exam to proceed despite concerns about Dr. Klipfel's qualifications. (*See* Dkt. 489, Exhibit A).

In February of 2026, the Rule 35 examination took place over the course of two days. Dr. Klipfel began her examination with presenting Plaintiff with a never-before-seen legal consent form outside of the presence of his attorney and only after Ms. Hersch, who was present to support Plaintiff through the process, briefly left the building to attend to her vehicle. This decision was a significant misstep, as it established a feeling of distrust. (*See* Dkt. 489, Exhibit C). As the evaluation continued, Plaintiff's lack of trust in Dr. Klipfel had profound effects on Plaintiff, causing significant dysregulation. (See Dkt. 489, Exhibit G). As set forth in greater detail below, Dr. Klipfel's inexperience in handling survivors of torture ultimately led her to be unable to handle Plaintiff's dysregulation or recognize the impact of same on her evaluation, resulting in inaccurate diagnoses and a recommendation that no accommodation was necessary for Plaintiff's depositions. See Klipfel Report incorporated herein by reference only as Exhibit 1. For the reasons set forth *infra*, this Court should disregard Dr. Klipfel's recommendations as to accommodations for Plaintiff's deposition and grant Plaintiff his requested accommodations.

## ARGUMENT

As set forth in Dr. Martinez Report and Ms. Hersch's May 14, 2025 Correspondence, Plaintiff suffers from mental disorders due to his traumatic experiences. (*See* Dkt. 415, Exhibit 4. *See also* Dkt. 487, Exhibit 2). While Dr. Klipfel concludes that "Mr. Walker does not currently meet diagnostic criteria for any major mental illness" and "is fully capable of comporting himself and answering questions without assistance from his therapist, *should he choose to do so*," her conclusions should be disregarded as her evaluation contained "significant methodological,

4

procedural, and interpretive deficiencies that materially undermine the reliability of its conclusions." (*See* Exhibit 1 at Pages 79-80. See also Report of Dr. Antonio Martinez and Mario Gonzalez, MA attached hereto as **Exhibit 2**).

### A. PLAINTIFF'S REQUEST FOR MS. HERSCH TO BE PRESENT AT HIS DEPOSITION AS A "MENTAL HEALTH INTERPRETER" SHOULD BE GRANTED.

With respect to Ms. Hersch's recommendation that she be present as a "mental health interpreter," it appears that clarification is needed as to what role a mental health interpreter would take during a deposition. It is Plaintiff's request that Ms. Hersch be permitted to be present during his deposition, not to clarify or explain any statements he may make during the deposition, but to alert counsel for Plaintiff when Plaintiff demonstrates symptoms of dysregulation. It has been recognized that the presence of trusted support personnel during potentially destabilizing experiences "may be essential to reduce anxiety and facilitate accurate disclosure, particularly in survivors of severe trauma and torture." (*See* Exhibit 2 at p. 5). Ms. Hersch would be able to notify counsel that a break is needed, a role that is vital, as continuing despite Plaintiff's dysregulation could be harmful to Plaintiff and would necessarily affect his ability to provide clear and accurate responses to the questions being posed. She would further be able to provide therapeutic support to Plaintiff during the breaks.

Although counsel for Plaintiff is capable of safeguarding Plaintiff from any improper questioning by Defense counsel, it would be prudent to have Ms. Hersch, the Plaintiff's therapist who has experienced the Plaintiff's suffering and is familiar with his mental state, to be present to recognize when the Plaintiff becomes or is about to become dysregulated to decrease the likelihood of re-traumatization, especially considering that Defendants' will likely employ an interrogative, provocative, and confrontational questioning style similar to that of Dr. Klipfel's, which will have

a destabilizing effect on Plaintiff. (*See* Exhibit 2, p. 4) (interrogative and confrontational interviewing styles "may provoke guardedness, agitation, or dysregulation in trauma survivors").

**B. ON INFORMATION AND BELIEF, PLAINTIFF'S REQUEST FOR BREAKS IS NOT AT ISSUE.**

As has been acknowledged, as-needed breaks are common practice during depositions. While maybe less typical, Plaintiff's request for a built-in break half-way through the deposition is not unreasonable. In fact, a longer break mid-way through the deposition for lunch is common practice. As such, Plaintiff is of the understanding that these accommodations are not disputed. In the event Defendants object to Plaintiff's request for these accommodations, this Court should nevertheless grant Plaintiff his requested accommodations as they are common practice and/or not unreasonable under the circumstances.

**C. PLAINTIFF'S DEPOSITION SHOULD TAKE PLACE OVER THE COURSE OF MULTIPLE, NONCONSECUTIVE DAYS WITH A DAILY TIME LIMIT NOT TO EXCEED THREE (3) HOURS.**

Of course, there is no way to definitively determine the exact amount of time that the Plaintiff will be able to sit each day. If, as requested, Ms. Hersch is permitted to be present, it is more likely that Plaintiff will be able to sit longer on any particular day. However, there is a strong likelihood of destabilization given the fact that counsel for those responsible for Plaintiff's traumatization will be questioning Plaintiff, the topics to be discussed, and the potential interrogative style of questioning. (*See id*). Accordingly, it would make most sense to schedule the non-consecutive days, to avoid any delays should the deposition be cut short at the recommendation of Ms. Hersch to protect Plaintiff's mental wellbeing. If Plaintiff does not suffer from destabilization and it is Ms. Hersch's recommendation that the deposition can continue once the three-hour mark has been met, then the parties can continue the deposition.

**D. PLAINTIFF SHOULD BE PERMITTED TO TERMINATE THE EXAM PRIOR TO THE THREE (3) HOUR LIMIT IN THE EVENT HE IS TOO DYSREGULATED TO CONTINUE AND THERAPUTIC SUPPORT DOES NOT RESOLVE THE DYSREGULATION.**

Plaintiff recognizes the need to complete his deposition; however, his safety and well-being need to be safeguarded, hence his request for accommodations. While Plaintiff will endeavor to meet the three hour time limit (or beyond should be able to do so), because Plaintiff suffers from mental illnesses which significantly affect his ability to discuss his past torture, incarceration, and all areas of life that have been affected by the actions of the Defendants in this matter, he cannot be sure how the deposition will impact his mental well-being. In his request for Ms. Hersch to be present during his deposition, Plaintiff has attempted to arm himself with all the tools available to him to be able to complete his deposition in a safe manner. Even so, in the event he becomes too dysregulated/destabilized to continue, Plaintiff should not be required to harm himself to keep to the three-hour threshold. If, as Plaintiff recommends, multiple non-consecutive days are scheduled, the parties should not experience any significant delays should Plaintiff be forced to terminate one of the days early due to dysregulation/destabilization.

**WHEREFORE**, the Plaintiff, **KEITH WALKER**, by and through his attorneys, PERL & GOODSNYDER, LTD.**,** respectfully requests that this Honorable Court enter an Order granting the following relief:

    A.  Granting Plaintiff's Opposed Motion for Deposition Accommodations;

    B.  Permitting Plaintiff the accommodations requested herein; and

7

C.  Granting such other and further relief as this Court deems just and equitable.

Dated: May 29, 2026

> Respectfully submitted on behalf of the:
> Plaintiff, **KEITH WALKER**,
>
> By and through his attorneys:
> PERL & GOODSNYDER, LTD.
>
> By: *Allen R. Perl*
> Mr. Allen R. Perl
> One of Plaintiff's Attorneys

Mr. Allen R. Perl
Mr. Christopher M. Goodsnyder
PERL & GOODSNYDER, LTD.
14 North Peoria Street
Suite 2C
Chicago, Illinois 60607
(312) 243-4500
aperl@perlandgoodsnyder.com
cgoodsnyder@perlandgoodsnyder.com

## CERTIFICATE OF SERVICE

I, Christopher Goodsnyder, an attorney, certify that on May 29, 2026, I filed the foregoing Opposed Motion for Deposition Accommodations using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Christopher M. Goodsnyder
*One of Plaintiff's Attorneys*